IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TROY JONES,                                Civ. No. 10-6133-AA
                                           OPINION AND ORDER
        Plaintiff,

    v.

U.S. BANK NATIONAL ASSOCIATION,
a Delaware corporation, dba
U.S. BANK,

        Defendant.
_____

Kevin T. Lafky
Lafky & Lafky
429 Court Street NE
Salem, OR 97301
     Attorney for plaintiff

Amanda M. Walkup
Todd R. Johnston
Mario D. Conte
Hershner Hunter, LLP
180 E. 11th Avenue
P.O. Box 1475
Eugene, OR 97440
     Attorneys for defendant

AIKEN, Chief Judge:

    Plaintiff  Troy  Jones  filed  suit  against  his  employer,

1  - OPINION AND ORDER

defendant U.S. Bank, alleging claims of racial discrimination and hostile work environment under 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and Or. Rev. Stat. § 659A.030, as well as common law claims of intentional and reckless infliction of emotional distress. Plaintiff seeks economic and non-economic damages, punitive damages, and attorney fees.   U.S. Bank now moves for summary judgment on all of plaintiff's claims.   For the reasons given below, U.S. Bank's motion is granted in part and denied in part.

## I. BACKGROUND

U.S. Bank employed plaintiff from February 3, 2007 to April 24, 2009.  Plaintiff's first supervisor was Kathy Waisanen, Branch Manager of the Royal and Danebo branch in Eugene, Oregon.  Waisanen and plaintiff worked together previously at another financial institution, and after Waisanen joined U.S. Bank, she recruited and hired plaintiff as a Branch Assistant I.

In July 2007, plaintiff was promoted to Branch Manager at the 18th and Chambers branch in Eugene.  Brian Bogatin, the District Manager for U.S. Bank, promoted plaintiff and was his direct supervisor.  Waisanen recommended plaintiff for this promotion.

After his promotion, plaintiff alleges that during a lunch meeting of Branch Managers, Waisanen told plaintiff that he was "a big black intimidating guy and you need to be careful in how you talk to your crew and customers."  Pl.'s Decl., ¶ 8.  U.S. denies that this statement was made.

2 - OPINION AND ORDER

According to U.S. Bank, plaintiff's performance as Branch Manager did not meet the expectations of Bogatin in terms of financial production. U.S. Bank also asserts that plaintiff failed to establish consistent management routines and was the subject of staff complaints. Ultimately, Bogatin told plaintiff that he could either keep his position as Branch Manager and meet improvement benchmarks or transfer to another position.

In September 2008, plaintiff returned to the Royal and Danebo Branch as a Branch Assistant II. Waisanen was again plaintiff's immediate supervisor.

After he returned to the Royal and Danebo Branch, plaintiff contends that he was the subject of several racial remarks by co-workers, two of which were uttered in Waisanen's presence. On one occasion, a U.S. Bank employee was looking at pictures of other U.S. Bank employees that were placed on a wall in the bank. After seeing plaintiff's picture on the bottom row, the employee made a comment about "always trying to keep the black man down." Pl.'s Decl., ¶ 12. Waisanen allegedly heard this comment and laughed. Plaintiff also asserts that a co-manager called him "buckwheat" on several occasions, once in Waisanen's presence. Plaintiff maintains that, to his knowledge, Waisanen did not reprimand or otherwise take action regarding this comment. Pl.'s Decl. ¶ 13. U.S. Bank denies these allegations.

In April 2009, plaintiff personally loaned a bank customer

3 - OPINION AND ORDER

$50.00. U.S. Bank's Code of Ethics and Business Conduct prohibits employees from lending money to customers. Waisanen Decl., Ex. 3. Plaintiff attempted to collect the money by calling the customer multiple times at her home and place of employment and eventually left a voicemail message with the customer. Pl.'s Depo., p. 159 (attached to Conte Decl.).

On April 24, 2009, plaintiff told Waisanen that he loaned money to a customer and that the customer might contact U.S. Bank to complain about him. On the same day, the customer called Waisanen and told her about the loan and plaintiff's attempts to collect the money. Waisanen Decl., ¶ 14, Ex. 2; Pl.'s Depo., pp. 169-170. The customer told Waisanen about plaintiff's voicemail message and said that plaintiff's attempts to collect the money were upsetting to her and felt threatening. Waisanen Decl., ¶ 14, Ex. 2. Later on April 24, 2009, the customer and Waisanen met in the parking lot of the Royal and Danebo branch, and Waisanen listened to the voicemail message on the customer's phone. Waisanen Decl., ¶ 15, Ex. 2. Plaintiff's stated in the message that if the customer did not pay back the money, plaintiff would go to her place of employment every day. Waisanen Decl. ¶ , Ex. 2.

When Waisanen confronted Plaintiff about the voicemail message, he did not deny leaving it. Waisanen Decl., ¶ 16. Waisanen then terminated plaintiff's employment.

U.S. Bank contends that it terminated plaintiff for violating

4 - OPINION AND ORDER

its Code of Ethics by loaning money to a bank customer and making several efforts to collect that debt in a manner that felt threatening to the customer. Waisanen Decl., ¶ 18; Pl.'s Depo., pp. 175, 180. Plaintiff contends he was terminated because of his race. Plaintiff alleges that when Waisanen fired him, she said, "I have told you before, you are a big intimidating black man, and you have to watch what you say." Pl.'s Decl., ¶ 31. U.S. Bank denies this allegation.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

5 - OPINION AND ORDER

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630. Nevertheless, the Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

## III. DISCUSSION

### A. Disparate Treatment

Plaintiff alleges race discrimination/disparate treatment under Title VII, 42 U.S.C. § 1981, and Or. Rev. Stat. § 659A.030. Specifically, plaintiff alleges that he was demoted, terminated, and treated differently due to his race. U.S. Bank moves for summary judgment on these claims, arguing that plaintiff cannot establish a prima facie case of race discrimination, and that he was terminated for legitimate and non-discriminatory reasons.

To prevail on his race discrimination claims, plaintiff must establish a prima facie case of discrimination. Surrell v. Cal. Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008); Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003); Pullom v. U.S. Bakery, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007). A plaintiff

6 - OPINION AND ORDER

may establish a prima facie case through direct or circumstantial evidence of discriminatory intent or other circumstances surrounding the adverse employment action that "give rise to an inference of discrimination." <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981); <u>Surrell</u>, 518 F.3d at 1105. Direct evidence typically consists of sexist, racist, or other discriminatory conduct "'which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" <u>Coghlan v. Am. Seafoods Co.</u>, 413 F.3d 1090, 1095 (9th Cir. 2005) (quoting <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998)).

Plaintiff may also establish a prima facie case under the *McDonnell Douglas* framework. <u>See McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Surrell</u>, 518 F.3d at 1105. Plaintiff must show that: 1) he belonged to a protected class; 2) he was performing his job in a satisfactory manner; 3) he was subjected to an adverse employment action; and 4) similarly situated employees outside his protected class received favorable treatment. <u>Kang v. U. Lim Am., Inc.</u>, 296 F.3d 810, 818 (9th Cir. 2002).

U.S. Bank maintains that plaintiff has no evidence of direct discriminatory conduct and cannot show establish a prima facie case based on circumstantial evidence. While U.S. Bank admits that plaintiff is a member of a protected class and was subjected to an adverse employment action, it maintains that plaintiff did not perform his job satisfactorily and was not treated differently from

7 - OPINION AND ORDER

similarly-situated employees.

In terms of job performance, U.S. Bank emphasizes that plaintiff violated U.S. Bank's Code of Ethics. U.S. Bank also maintains that it received a complaint from a customer who said that plaintiff asked her out for a date while on company time, and that plaintiff asked a co-worker to remove fees from plaintiff's U.S. Bank account in violation of U.S. Bank policy. Waisanen Decl., ¶¶ 11, 12. U.S. further Bank argues that plaintiff cannot show similarly-situated employees were treated differently, because he identifies no U.S. Bank manager who was treated more leniently for violating the Code of Ethics. In response, plaintiff emphasizes that he received commendations and positive feedback during his employment, and disputes that he received any type of reprimand prior to his termination. Lafkey Decl., Exs. 1, 2. Further, plaintiff argues that U.S. Bank employees outside his protected class were counseled and subject to progressive discipline for violations of U.S. Bank policy, while he was subject to immediate termination.[1]

Even though plaintiff relies on the *McDonnell Douglas*

[1]U.S. Bank moves to strike plaintiff's evidence regarding other employees, arguing that such evidence lacks foundation, constitutes hearsay, and is not based on plaintiff's personal knowledge. However, the documents on which plaintiff relies were produced by U.S. Bank and arguably fall within the business records exception to hearsay. Regardless, consideration of this evidence is not necessary for purpose of this motion, as I find that plaintiff presents evidence of direct discrimination.

8 - OPINION AND ORDER

framework to establish his prima facie case, I find that plaintiff establishes a prima facie case based on direct evidence. Waisanen's alleged labeling of plaintiff as a "big intimidating black man" who "needs to watch what" he says constitutes direct evidence that plaintiff's race, and stereotypes related to his race, played a role in Waisanen's decision to terminate plaintiff's employment. See Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1149 (9th Cir. 1997) (calling an employee a "dumb Mexican" was "an egregious and bigoted insult" and was "strong evidence of discriminatory animus").  Further, plaintiff alleges that this comment was similar to one Waisanen made during a Branch Managers' meeting.  Pl.'s Decl., ¶ 8.  "Where a decisionmaker makes a discriminatory remark against a member of the plaintiff's class, a reasonable factfinder may conclude that discriminatory animus played a role in the challenged decision." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1038 (9th Cir. 2005). Thus, drawing all reasonable inferences in favor of plaintiff, a jury could find that Waisanen's comment to plaintiff is evidence of racial animus with respect to his termination.

However, I agree with U.S. Bank that plaintiff offers no evidence that his demotion was motivated by discrimination. Plaintiff cites no facts to support the conclusion that Bogatin's offer to plaintiff to remain Branch Manager or transfer to the Branch Assistant II position was motivated by plaintiff's race, or

9 - OPINION AND ORDER

that other similarly situated managers received more favorable treatment. Rather, plaintiff speculates that Waisanen attempted to influence Bogatin's opinion of him and sabotage plaintiff's success as a Branch Manager after Bogatin told Waisanen that her branch should be more like plaintiff's. See Pl.'s Decl., ¶¶ 6, 7, 9. However, other than his unsupported speculation, plaintiff offers no admissible evidence to support his contention that Waisanen made derogatory remarks about plaintiff to Bogatin.    Regardless, plaintiff does not present evidence that his demotion or Waisanen's "sabotage" was motivated by his race. Pl.'s Depo., pp. 96-97.

Given the direct evidence of discrimination with respect to plaintiff's termination, the burden shifts to U.S. Bank to articulate legitimate, nondiscriminatory reasons for its employment action. Burdine, 450 U.S. at 253; Surrell,518 F.3d at 1106.  U.S. Bank maintains that plaintiff was fired because he personally loaned money to a bank customer in violation of U.S. Bank policy and then made several attempts to collect that loan, resulting in a complaint from the customer regarding plaintiff's behavior. Plaintiff does not dispute these facts, and I therefore find that U.S. Bank presents a legitimate, non-discriminatory basis for plaintiff's termination.

Once U.S. Bank articulates a legitimate, nondiscriminatory reason for plaintiff's termination, the burden shifts back to plaintiff to raise a question of fact that U.S. Bank's reasons are

pretextual. <u>Burdine</u>, 450 U.S. at 253. Plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Id.</u> at 256. Given that direct evidence is more probative than indirect or circumstantial evidence, plaintiff needs "very little" to defeat summary judgment. <u>Coghlan</u>, 413 F.3d at 1095 (quoting <u>Godwin</u>, 150 F.3d at 1221); <u>see also</u> <u>Dominguez-Curry</u>, 424 F.3d at 1038 (where plaintiff offers direct evidence of discrimination, the requirement of "specific and substantial" evidence of pretext does not apply).

As discussed above, plaintiff presents direct evidence of a discriminatory animus by virtue of Waisanen's statements referring to him as a "big intimidating black man." Pl.'s Decl., ¶¶ 8, 31. Plaintiff also alleges that Waisanen laughed in his presence when another U.S. Bank employee pointed to a picture of plaintiff and commented about "always trying to keep the black man down." Pl.'s Decl., ¶ 12. Further, plaintiff alleges that shortly before his termination a co-worker called him "buckwheat" in Waisanen's presence and she took no corrective action. Pl.'s Decl., ¶ 13.

U.S. Bank maintains that plaintiff's direct evidence is not as overwhelming as in other cases where courts have denied summary judgment. However, in the Ninth Circuit "a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient

to preclude summary judgment for the employer." <u>Dominguez-Curry</u>, 424 F.3d at 1039; <u>see also</u> <u>Godwin</u>, 150 F.3d at 1221 (comment that decision-maker "did not want to deal with another female" was direct evidence of discrimination); <u>Cordova</u>, 124 F.3d at 1149 (calling an employee a "dumb Mexican" was direct evidence of discrimination); <u>Chuang v. Univ. of Cal. Davis, Bd. of Trustees</u>, 225 F.3d 1115, 1128 (9th Cir. 2000) (statement by member of decisionmaking body that "two Chinks" were "more than enough" was sufficient evidence of discriminatory motive); <u>Lindahl v. Air France</u>, 930 F.2d 1434, 1439 (9th Cir. 1991) (evidence that employer believed female candidates were "nervous" and "easily upset" was direct evidence of gender stereotyping).

Finally, U.S. Bank contends that the court should recognize the inference against discrimination that applies where the same person both hired and fired the plaintiff. <u>Bradley v. Harcourt, Brace & Co.</u>, 104 F.3d 267, 270 (9th Cir. 1996); <u>Coghlan</u>, 413 F.3d at 1096. Plaintiff does not dispute that Waisanen hired him while employed at another financial institution, recruited and hired plaintiff at U.S. Bank, and hired him as an assistant manager after he stepped down as Branch Manager. However, construing all inferences in favor of plaintiff, I cannot find that the same-actor inference overcomes the direct evidence that plaintiff's race played a role in his termination. <u>See</u> <u>Coghlan</u>, 413 F.3d at 1096 ("Coghlan does not offer any evidence of [defendant's]

12 - OPINION AND ORDER

discriminatory intent"). Accordingly, I find that Waisanen's statements constitute sufficient evidence to raise a triable issue as to whether U.S. Bank's proffered reason for plaintiff's termination was true or whether it masked a discriminatory motive.

In sum, while not overwhelming, plaintiff's direct evidence of racial animus is sufficient to raise a genuine issue of material fact. Thus, summary judgment is denied as to plaintiff's race discrimination claims based on his termination.

## B. Hostile Work Environment

Plaintiff also alleges that the conduct of Waisanen and others created a hostile work environment. To prevail on a hostile workplace discrimination claim, plaintiff must show that: 1) he was subjected to verbal or physical conduct of a racial nature; 2) the conduct was unwelcome; and 3) the conduct "was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." Vasquez, 349 F.3d at 642. Further, "[t]he working environment must both subjectively and objectively be perceived as abusive." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (internal quotation marks and citation omitted).

I agree with U.S. Bank that plaintiff fails to show that he possessed a subjective belief that his work environment was abusive. During his deposition, plaintiff testified that he "did not feel like [U.S. Bank] was a hostile environment [in which] to

13 - OPINION AND ORDER

work." Pl.'s Depo., p. 236. Further, plaintiff testified that he "loved [his] job" and "felt comfortable working [at U.S. Bank]." Id. p. 237. More specifically, plaintiff testified that "no one [at U.S. Bank] joked about [anyone] else's race or said anything like that that can be construed as a racial comment or something like that." Id. p. 238. Thus, there is no evidence before the court that plaintiff perceived his workplace to be hostile, and summary judgment is granted on this claim.

C. Intentional and Reckless Infliction of Emotional Distress

U.S. Bank next moves for summary judgment on plaintiff's intentional infliction of emotion distress (IIED) and reckless infliction of emotional distress (RIED) claims. U.S. Bank argues that plaintiff's IIED claim fails because plaintiff cannot show that U.S. Bank's conduct was outrageous. I agree.

To succeed on his IIED claim, plaintiff must prove:

(1) that defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) that defendants engaged in outrageous conduct-i.e., conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) that defendants' conduct in fact caused plaintiff severe emotional distress.

Checkley v. Boyd, 198 Or. App. 110, 124, 107 P.3d 65 (2005)(quoting McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995)).

Plaintiff argues that Waisanen's discriminatory comments establish her intent, for which U.S. Bank is vicariously liable, to cause plaintiff emotional distress. However, I find that none of

14 - OPINION AND ORDER

the comments qualify as an extraordinary transgression of socially acceptable conduct. It is well established in Oregon that the tort of IIED "does not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life." Hetfeld v. Bostwick, 136 Or. App. 305, 308, 901 P.2d 986 (1995). Rather, "[t]he conduct is an extraordinary transgression if it is so offensive as to be outrageous or outrageous in the extreme." Id. (internal quotation marks and citations omitted). While Waisanen's alleged comments that plaintiff was a "big intimidating black man" were inappropriate and arguably insulting, they are not outrageous in the extreme within the meaning of IIED. Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or. App. 234, 239, 828 P.2d 479 (1992) (insults or "conduct that is merely rude, boorish, tyrannical, churlish and mean" do not satisfy IIED standards). Thus, U.S. Bank's motion is granted as to plaintiff's IIED claim.

With respect to plaintiff's RIED claim, it has been found appropriate in three circumstances: (1) "when accompanied by physical injury"; (2) "when a defendant's conduct infringes on a legally protected interest"; (3) "where there is a duty to protect against psychological harm." Dawson v. Entek Int'l, 622 F. Supp. 2d 1277, 1292 (D. Or. 2009), rev'd on other grounds, 630 F.3d 928 (9th Cir. 2011) (citations omitted); see also Drake v. Mutual of Enumclaw Ins. Co., 167 Or. App. 475, 487 n.3, 1 P.3d 1065 (2000).

15 - OPINION AND ORDER

Plaintiff makes no argument and provides no evidence to show that any of the above circumstances apply in this case.   Therefore, summary judgment is granted on this claim.

## CONCLUSION

U.S. Bank's motion for summary judgement (doc. 21) is DENIED as to plaintiff's race discrimination claims based on his termination and GRANTED as to plaintiff's hostile work environment, IIED, and RIED claims.   Defendant's Motion to Strike (doc. 43) is DENIED.

IT IS SO ORDERED.

Dated this ___ day of _____ 2011.

_____
Ann Aiken
United States District Judge

16 - OPINION AND ORDER